**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**HADI SAFAVI,**

                **Plaintiff,**

**vs.**                                                    **Case No.   8:04-cv-1091-T-MSS**

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**

_____/

## ORDER

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") reducing Plaintiff's retirement insurance benefits based on Plaintiff's receipt of a pension for work not covered by Social Security.[1]

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), and the pleadings and memoranda submitted by the parties in this case.

**I.**    **BACKGROUND**

    A.  Procedural History

Plaintiff applied for retirement insurance benefits on March 17, 2000.  (T. at 12).

---

[1]The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c) and the district court has referred the matter for final disposition.

Plaintiff was awarded reduced retirement insurance benefits due to Plaintiff's entitlement to a pension based on work not covered by Social Security. (T. at 12-13). Plaintiff requested reconsideration of this determination. (T. at 13). On October 26, 2001, following the reconsideration determination dated August 28, 2001, Plaintiff requested a hearing before the ALJ. (T. at 13). A hearing was held at which Plaintiff appeared and testified. (T. at 11). As acknowledged by the ALJ, the review of the constitutionality of a statute is beyond the jurisdiction of an ALJ and, as such, was not considered by the ALJ. (T. at 14). On November 20, 2003, the ALJ affirmed the reduction of Plaintiff's benefits pursuant to the Windfall Elimination Provision of the Act. (T. at 14). On April 20, 2004, the Appeals Council denied review of the November 20, 2003, ALJ decision. (T at 3-5). On May 13, 2004, Plaintiff filed this action for review. (Dkt. 1).

B. Work History and Findings Summary

Plaintiff, a resident alien, worked for six and a half years in Saudi Arabia and Bangladesh for the United Nations ("U.N."), a non-profit organization which did not pay FICA taxes. (T. at 12-13, 93-94). Upon returning to the United States, he worked for approximately fourteen years as a transportation planner for the State of Florida, an employer covered by Social Security. (T. at 13, 96). Had Plaintiff's U.N. employment been subject to FICA, his retirement insurance benefits under the Act would have been greater than they were when Plaintiff began receiving benefits under the Act. (T. at 12).

After considering the evidence of record, including an assessment by the Program Service Center, the testimony of Plaintiff, arguments presented by counsel, a document, along with Plaintiff's concession, verifying that Plaintiff worked for the U.N., an organization that was not covered by Social Security, and the fact that Plaintiff became eligible for a

pension after 1985 based on this service, the ALJ found that Section 215(a)(7)(A) of the Social Security Act, 42 U.S.C. § 301 *et seq.,* did apply to Plaintiff to affect a lower benefit based on the modified formula articulated in the Act.  (T. at 13).   As such, the ALJ concluded that Plaintiff's retirement insurance benefits were appropriately calculated.  (T. at 14).

## II.    DISCUSSION

Here, Plaintiff does not challenge the decision of the ALJ that the Act was properly applied.  Plaintiff concedes, rather, that the Windfall Elimination Provision of the Act applied to reduce his benefit amount.  Instead, Plaintiff argues, in a five page memorandum citing only two cases, one of which contains an erroneous citation, that do not support his argument that the exclusionary provision contained in the Windfall Elimination Provision is arbitrary and unconstitutional.

A.  Legal Background

An individual who has worked for covered wages, wages upon which an individual pays social security taxes, is eligible to receive social security retirement benefits based on such service.  See Das v. Dept. of Health & Human Services, 17 F.3d 1250, 1253 (9th Cir. 1993).  In contrast, an individual who has worked solely for non-covered wages, wages upon which no social security taxes are paid, is not eligible to receive social security retirement benefits.  See id.  Prior to 1983, individuals who had a history of employment with both covered and non-covered employers benefitted from a retirement benefits calculation formula that was intended to account for workers who remained in covered employment throughout their careers but had periods of unemployment due to child rearing or involuntary unemployment.   H.R. Rep. No. 98-25, at 22 (1983).   Specifically, a

beneficiary's primary insurance amount, based upon his average monthly earnings, was calculated without regard to whether that beneficiary's wages were covered or non-covered. Stroup v. Barnhart, 327 F.3d 1258, 1259 (11th Cir. 2003). As a result, a worker with a history of both covered and non-covered employment would receive credit for uncovered work in the calculation of available social security benefits in addition to whatever pension benefits he was entitled to from his non-covered employer. Id.

In response to this anomaly, Congress promulgated the Windfall Elimination Provision ("WEP") of the Social Security Act, 42 U.S.C. § 415(a)(7), to eliminate the windfall that would otherwise result when such an individual was eligible for both social security retirement benefits and pension payments from a non-covered employer. Das, 17 F.3d at 1253. The WEP provides for a "correction" in the calculation of monthly social security retirement benefits for such individuals. Stroup, 327 F.3d at 1260; 42 U.S.C. § 415(a)(7)(B).

The WEP applies to an individual who (1) attains age 62 after 1985 (as long as he or she did not become entitled to benefits for the twelve months before turning age 62 before 1986) or attains age 62 after 1985 and becomes eligible for benefits after 1985 and (2) becomes eligible for a monthly periodic payment after 1985 based in whole or in part upon earnings for service which did not constitute "employment" under the Act. 42 U.S.C. § 415(a)(7)(A). Section 210(a)(15) of the Act excludes from the definition of "employment":

> Service performed in the employ of an international organization entitled to enjoy privileges, exemptions, and immunities as an international organization under the International Organizations Immunities Act (59 Stat. 669), except service which constitutes "employment" under subsection (r). 42 U.S.C. § 410(a)(15).

As subsection (r) was apparently not applicable to Plaintiff,[2] Plaintiff's employment with the U.N. was not considered "employment" for purposes of the Act.  As such, Plaintiff's age and entitlement to a pension were such that the WEP applied to affect a lower social security benefit because his work performed with the U.N. was excluded from coverage under the Act.

Section 215(a)(7)(E) (the "exclusionary provision"), however, provides for an exception to the application of the WEP for individuals who on January 1, 1984, were employees of a non-profit organization that on December 31, 1983, did not have in effect a waiver certificate under section 3121(k) of the Internal Revenue Code of 1954 but to which coverage was extended on that date by reason of the amendments made by section 102 of that Act.  42 U.S.C. § 415(a)(7)(E).  Prior to 1983, "employment" covered by the Social Security Act did not include "service performed in the employ of a religious, charitable, educational or other organization described in section 501(c)(3) . . . which is exempt from income tax . . . ."  Amy L. Henrich, Preferential Treatment of Charities Under the Unemployment Insurance Laws, 94 Yale L.J. 1472, 1481 n.46 (1985).  Employees of such organizations could only receive social security coverage if their employer waived the employer's social security tax exemption.  Id.  Such a waiver could also later be terminated by the employer with two years advance notice.  Id.  Once terminated, however, an employer could not again elect to waive its exemption.  Id.

Due to a growing trend to reinstate social security tax exempt status and thereby terminate participation in the social security program, Congress removed the social security

---

[2] Subsection (r) applies to certain Federal employees who transfer to an international organization.

tax exemption for such 501(c)(3) organizations and simultaneously repealed the waiver provision, effective January 1, 1984.  Id.; Matthew Bender, Social Security Practice Guide, §2.01[4] (2005); Social Security Amendments of 1983, Pub. L. No. 98-21, § 102, 97 Stat. 65 (amending 42 U.S.C. § 410 and 26 U.S.C. § 3121).  The result was that nonprofit organizations as defined by 26 U.S.C. section 501(c)(3) became mandatorily covered employers who paid social security taxes and whose employees became eligible for social security benefits effective January 1, 1984.[3]  The Social Security Amendments of 1983 (the "1983 amendments") also enacted the WEP, including the exclusion to the WEP for newly covered employees of 501(c)(3) organizations such that the WEP would not apply to reduce their retirement benefits despite the fact that their work prior to January 1, 1984, for the non-profit was not technically "covered" work.[4]  The exception essentially treats those workers who transitioned from non-covered to covered employees by virtue of their work for a 501(c)(3) non-profit as if they were covered employees all along.

B.  Analysis

Plaintiff argues that the effect of the exclusionary provision, Section 215(a)(7)(E) of the Act, denies him equal protection under the law.  Plaintiff argues that he was fully vested in his pension benefits on December 31, 1983.  Plaintiff argues that "it makes no rational or logical sense whatsoever" to treat an employee with vested benefits who worked for the U.N.

---

[3] Employees newly covered effective January 1, 1984, also included federal civilian employees hired on or after January 1, 1984, members of Congress, the President, the Vice-President, the Social Security Commissioner and all then current Congressional staff not yet covered.  Bender, *supra.*

[4] The WEP similarly contains an exclusion for Federal workers newly covered under Social Security as of January 1, 1984.  Bender, *supra.* at § 4.05[5][b](citing 42 U.S.C. § 415(a)(7)(E)(i)).

differently than an employee with vested benefits who worked for a non-profit organization that became covered pursuant to the Act amendments.  (Dkt. 17 at p.3).

Plaintiff concedes that if the WEP applied similarly to employees of previously non-covered non-profit employers, Plaintiff would have no recourse.  In the alternative, if Plaintiff were not yet vested in his pension plan as of December 31, 1983, the law would have a rational basis because the employee could choose to continue to work for the employer or choose to resign.  However, Plaintiff argues that Section 215(a)(7)(E) when considered along with Section 215(a)(7)(A) is arbitrary because it treats persons fully vested in retirement differently because "the employer chose to change the status of the organization."  (Dkt. 17 at p.4).  Plaintiff "posits that there is no rational basis" for the distinction made.  (Id.)  Thus, Plaintiff argues that the law as applied to individuals with vested benefits upon its enactment is unconstitutional as violative of the equal protection clause.

Defendant responds that several courts have already found the WEP to be constitutional.  Defendant, however, fails wholly to postulate a rational basis for the specific exclusionary provision of Section 215(a)(7)(E).

An equal protection assertion begins with a consideration of the status of the challenging party and the class of individuals allegedly unlawfully favored by a government classification.  Smart v. Shalala, 9 F.3d 921, 924 (11th Cir. 1993).  The challenging party must first establish that he is similarly situated to individuals receiving disparate treatment before the Court can determine whether the classification passes constitutional muster.  Id.

Constitutional challenges to social security legislation are reviewed under the rational basis standard.  Rudykoff v. Apfel, 193 F.3d 579, 580 (2d Cir. 1999)(citing Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)).  Under rational basis

7

scrutiny, a classification that does not involve fundamental rights or proceed along suspect lines "is accorded a strong presumption of validity" and should be upheld "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Rodriguez v. U.S., 169 F.3d 1342, 1350 (11th Cir. 1999)(quoting Heller v. Doe, 509 U.S. 312, 319-320, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993)).  Courts should not judge the wisdom, fairness, or logic of legislative choices and a classification must be upheld under an equal protection challenge if there is "any reasonably conceivable state of facts that could provide a rational basis for the classification."  Id. (quoting Heller, 509 U.S. at 319-320). Further, the person challenging the legislation has the burden of negating "*every conceivable basis which might support it, whether or not the basis has a foundation in the record.*"  Id. (citing Heller, 509 U.S. at 320-321)(emphasis added).   In the area of social welfare, specifically, a statute that differentiates in its treatment of certain classifications of individuals will not be invalid if "any state of facts may be reasonably perceived to justify it."  King v. Schweiker, 647 F.2d 541, 545 (5th Cir. 1981).

Defendant is correct that several courts have already found that the WEP is constitutional and reasonably related to the legitimate government goal of reducing windfall benefits. See Das, 17 F.3d at 1255; Rudykoff, 193 F.3d at 581.  However, these courts have not specifically addressed the exclusionary provision of the WEP raised by Plaintiff.

First, the Court notes that the exclusionary provision specifically exempts an individual who, as of January 1, 1984, "is an employee" of an organization that became covered mandatorily. 42 U.S.C. § 415(7)(E)(i), (ii) (emphasis added).  Accordingly, it is not clear, as Plaintiff assumes in his brief, that this exclusion would apply to an individual who, like Plaintiff, was no longer an employee of the newly covered 501(c)(3) organization on January

8

1, 1984.  Nevertheless, the Court finds that Plaintiff is not similarly situated to 501(c)(3) employees exempt from the WEP and that the exclusionary provision is rationally related to a legitimate government purposes under the standard set forth above.

The Court finds that Plaintiff is not similarly situated to individuals to whom the WEP exclusionary provision applies.  Plaintiff is a resident alien who worked outside of the United States for the U.N.  The courts have noted the impossibility of compelling foreign governments or entities to make social security contributions.  See Letourneau v. Califano, 453 F. Supp. 636, 637-38 (S.D. N.Y. 1978).  Accordingly, the Social Security Act provides for a means by which United States citizens working *in the United States* for foreign governments or international organizations can qualify for social security benefits by paying into the program under the "fiction" that they are self-employed.  Id. at 638 (emphasis added); 42 U.S.C. § 411(c)(2)(C).  However, this provision would not apply to Plaintiff as he is admittedly not a citizen and did not perform his work for the U.N. in the United States.  In accordance, Plaintiff concedes that he was informed, after he requested that he be allowed to make payments to Social Security, that his status as a resident alien working abroad would preclude such payments.  (T. at 34).  In light of the foregoing, Plaintiff is not similarly situated, as he suggests, to an individual who is working in the United States for a U.S. company with 501(c)(3) organization status and who has vested pension benefits as of December 31, 1983.

Even if Plaintiff were similarly situated, there are conceivably legitimate reasons for the different treatment of newly covered 501(c)(3) non-profit employees and Plaintiff under the WEP.  Plaintiff mistakenly and without citation or attribution asserts that the purpose of the exclusionary provision was to encourage non-profit organizations to switch to coverage

9

under the Act and that differentiating between vested employees because their employer "chose to change the status of the organization" is unfair. (Dkt. 17 at p.5). The 1983 amendments to the Act, however, did not give 501(c)(3) non-profit employers a choice to change the status of their organizations. The choice to become a covered employer existed prior to 1983. In contrast, the status of the 501(c)(3) non-profit organization was mandatorily changed from optional coverage to mandatory coverage by the 1983 amendments to the Act.

Congress made a decision to "grandfather in" the employees of 501(c)(3) organizations as "covered" employees by virtue of the exclusionary provision of the WEP. This protection afforded to 501(c)(3) employees made more palatable the accompanying mandate that 501(c)(3) non-profit organizations become covered employers where such organizations previously had the choice to be non-covered employers. On the other hand, the 1983 amendments to the Act did not mandatorily change the status of the U.N. as a non-covered employer. Accordingly, Congress did not grant the employees of the U.N. a similar exclusion under the WEP.

A review of the legislative history of the 1983 amendments did not reveal any specific articulated rationale for the exclusionary provision. However, one need not be set forth in the legislation itself. Rodriguez, 169 F.3d at 1350. Courts must consider any reasonable conceivable rationale for the challenged classification. Several are plausible. One purpose in creating the coverage mandate for 501(c)(3) organizations was to increase social security funds by ensuring an increase in participation by these organizations. See H.R. Rep. No. 98-25, at 1-2 (1983). In exchange for the increased financial burden on these employers, Congress provided that said employees would be exempt from the WEP such that their

10

social security benefits would not be reduced.  This quid pro quo is a legitimate reason for distinguishing between employees who work for a newly covered non-profit organization and an international organization such as the U.N. which is not mandatorily covered.

Another conceivable rational basis for excluding Plaintiff from this classification is that, as noted above, it is not clear that Congress would have been able to provide coverage for Plaintiff's work with the U.N. even if it had desired to do so due to its status as an international organization.  As noted, it does not appear that Congress could have mandated that the U.N. pay FICA taxes in exchange for an agreement to cover retroactively its otherwise uncovered, offshore employees.  <u>See</u> <u>Letourneau</u>, 453 F. Supp. at 637-38. Further, Plaintiff has not pointed to and the Court has not found any waiver provision contained in the Act that would permit the U.N. to submit voluntarily itself to the Social Security program if it desired to do so.  Accordingly, the U.N. was not, and apparently could not be, deemed a covered employer, either mandatorily or optionally.

As noted above, under the rational basis standard, the person challenging the legislation has the burden of negating "every conceivable basis which might support it, whether or not the basis has a foundation in the record."  <u>Rodriguez</u>, 169 F.3d at 1350. Here, Plaintiff has wholly failed to meet this standard.  In Plaintiff's five page memorandum, Plaintiff postulated only a single basis that Congress may have desired to encourage employers to participate in the social security program.  As discussed, this basis is not conceivable in light of the mandatory nature of coverage extended to 501(c)(3) organizations.

In light of the findings that Plaintiff is not similarly situated to employees working in the United States for a 501(c)(3) employer and that conceivable legitimate reasons exist for

11

providing that the exclusionary provision applies to employees of such organizations but not to Plaintiff, and in light of Plaintiff's failure to meet his burden, the Court finds that Plaintiff has failed to support his constitutional challenge to the WEP exclusionary provision facially or as applied to him.    It is Ordered, therefore, that the Commissioner's decision is **AFFIRMED**. The CLERK is directed to enter judgment in favor of Defendant and CLOSE the case.

**DONE AND ORDERED** in Tampa, Florida on this 29th day of September 2005.

MARY S. SCRIVEN
United States Magistrate Judge

Copies to:

Counsel of Record